# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD KUBERSKI and ERIC L. LAWTON, Derivatively, and on Behalf of Nominal Defendant LIME ENERGY CO., <br><br>        Plaintiffs, <br><br>    v. <br><br>JOHN O'ROURKE, JEFFREY MISTARZ, DAVID ASPLUND, GREGORY BARNUM, CHRISTOPHER CAPPS, WILLIAM CAREY, JR., JOSEPH DESMOND, STEPHEN GLICK, PRADEEP KAPADIA, RICHARD KIPHART, DANIEL PARKE and DAVID VALENTINE, <br><br>        Defendants, <br><br>    and <br><br>LIME ENERGY CO., a Delaware Corporation, <br><br>        Nominal Defendant. | Case No. 12 C 7993 <br><br> (Consolidated with Case No. 13 C 1708) <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

This is a shareholder derivative action in which Plaintiffs Richard Kuberski ("Kuberski") and Eric L. Lawton ("Lawton"), shareholders of Defendant Lime Energy Co. ("Lime"), seek to sue the members of the Board of Directors, certain former directors, and one officer on behalf of Lime.

## I. LEGAL STANDARD

Under a derivative suit a shareholder seeks to enforce a right that belongs to the corporation. A basis principle of corporate governance is to place the decision to initiate litigation in the hands of the board of directors. Accordingly, Federal Rule of Civil Procedure 23.1 requires a plaintiff bringing a shareholder derivative action to state with particularity "any effort by the plaintiff to obtain th desired action from the directors or comparable authority [and] the reasons for . . . not making the effort." Whether the content of the statement of particularity suffices to permit the shareholders to proceed with the litigation, however, depends on state substantive law. *Robert F. Booth Trust v. Crowley,* 687 F.3d 314, 316-17 (7th Cir. 2012). Because Lime is incorporated in Delaware, Delaware law determines whether the plaintiffs may litigate derivatively on Lime's behalf, since they made no demand on the Lime Board to bring a suit.

Under Delaware law, plaintiffs like Kuberski and Lawton must make a pre-suit demand of the board of directors, unless "under the particularized facts alleged, a reasonable doubt is created that (1) the directors are disinterested and independent [or](2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis,* 473 A.2d 805 (Del. 1984). The test is disjunctive,

*i.e.,* if either prong is satisfied, demand is excused. *Brehm v. Eisner,* 746 A.2d 244, 256 (Del. 2000).

In order to establish the first prong, Plaintiffs must plead with particularity, facts that show that the Board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations, such as an entitlement to receive a personal financial benefit from the challenged conduct which is not equally shared by the stockholders.

The second prong involves the Business Judgment Rule which rule establishes "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. It is an acknowledgment of the managerial prerogatives of Delaware directors. *Gantler v. Stephens,* 965 A.2d 695, 705 (Del. 2009). A plaintiff must plead sufficient facts with particularity to rebut that presumption, which it can do by showing a director breached the fiduciary duty of loyalty and fails to act in good faith.

## II. BACKGROUND

Lime is a Delaware corporation that provides clean energy solutions to various entities and commercial businesses. At the time the initial Complaints in this case were filed, Lime's

Board was composed of six directors: David Asplund ("Asplund"), Lime's Executive Chairman and former CEO, John O'Rourke ("O'Rourke"), Lime's current CEO, and four outside directors, Gregory Barnum ("Barnum"), Christopher Capps ("Capps"), Stephen Glick ("Glick"), and Richard Kiphart ("Kiphart"). Although Asplund resigned from the Board on March 6, 2013 and has since passed away, under Delaware law, the question of demand futility focuses on the board's composition at the time plaintiff's claims were first brought. *Harris v. Carter,* 582 A.2d 222, 228-29 (Del. Ch. 1990).

The alleged misreporting of revenue over a two-year period was announced by a Lime Company press release issued on July 17, 2012. The specific periods encompassed the company's consolidated financial statements on Form 10-K for the periods ending December 31, 2010 and December 31, 2012 and quarterly report on Form 10-Q for the period ending March 31, 2012. The statement further stated that the Board's Audit Committee made the determination based on the results of a partial internal review conducted by the Company's management. The statement said that the improprieties may have included the recording of non-existent revenue and the recording of revenue earlier that was appropriate.

On December 27, 2012, the Company issued another press release announcing an expansion of the internal review to

include the years ending on December 31, 2008, and December 31, 2009. On January 14, 2013, Lime issued another press release advising that it had received a determination letter from the NASDAQ's Listing Qualification Department, that Lime was non complaint with NASDAQ's listing rules and was in danger of being delisted, although at the time of the Complaint it continued to be listed.

Damages alleged to have been incurred by Lime include expenditure of significant sums of money for legal fees, the loss of reputation and good will, incurring accountant and investigator fees with respect to the internal investigation, and loss of revenues and profits due to any subsequent restatements. Compl. ¶ 215.

As to Defendants Asplund and O'Rourke, the former and the current CEO, the allegations are that as a result of their offices, they lack independence. Further, as such they were "ultimately responsible for the Company's operation, the compilation of financial statements, and internal controls." Thus, "they either participated in or were recklessly unaware of the fraudulent scheme to inflate the Company's earnings and revenue figures, which was intended to make the Company appear more profitable and attractive to investors." Compl. ¶¶ 209-211. Further, they are alleged to be Defendants in related securities fraud class actions. Compl. ¶ 213.

As to Defendant Kiphart, who was Chairman of the Board from 2006 until 2011, and again after May 29, 2012, he is alleged, similar to Asplund and O"Rourke, to have either participated in or was recklessly unaware of the fraudulent schemes. Compl. ¶¶ 214, 215. He is further alleged to dominate and control other board members because he was the largest shareholder (holding more than 40% of Lime's common stock) and because he personally provided substantial financing and liquidity to the company by entering into a revolving credit note with the company, his agreement to issue letters of credit on the company's behalf, and by providing a $2 million revolving bridge loan. Compl. ¶ 216.

As to Defendants, Barnum and Capps, they are alleged to have participated directly in the schemes through their membership on the Board Audit committee. Thus, according to the Complaint, they reviewed and approved the false financial statement and as members they had "heightened responsibilities for ensuring the reliability of the financial reporting and compliance with applicable laws and regulations." In addition to reviewing and approving the financial results of the Lime business operations, they signed the annual reports for Lime on Form 10-K for each of the relevant years. Compl. ¶¶ 217-220.

Somewhat redundantly the Complaint also charges all of the directors with violating the Lime's Code of Ethics, with reviewing and approving the various Form 10-Ks, for making with "either knowing or recklessly making improper statement in the company's press releases and SEC filings" concerning the company's financial results and business operations, and by failing "to insure that the Company had an adequate system of internal and financial controls in place to prevent the dissemination of improper public disclosures." Compl. ¶¶ 224, 225).

Further, many of the board members had previous business relations with one another through companies that were previously acquired by Lime. Compl. ¶ 227. Kiphart is the farther-in-law of Capps and Valentine, and all of the Defendants have made capital investments into the company. *Id.*

Finally, the demand is alleged to have been futile because the Board "has so restricted the scope of the [internal investigation] as to render it incomplete and ineffective." Compl. ¶ 228.

### III. DISCUSSION

Where a board consists, as here, with six members, if plaintiffs can establish that three are not disinterested and not independent, then demand is considered futile because there would not be a majority of independent directors. *Beneville v.*

*York,* 769 A.2d 80, 85-86 (Del. Ch. 2999). In this context "disinterested" means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally. *Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984). "Independence" means that a director's decision is "based on the corporate merits of the subject before the board rather than extraneous considerations of influences," such as where a director is "dominated and controlled" by someone who is interested. *Id.,* at 816; *Brehm v. Eisner,* 746 A.2d 244 at 257. However, if there is no "interested" director in the transaction, there is no need to consider the independence of the remaining directors.

Plaintiffs raise a number of arguments attempting to demonstrate that some or all of the directors were interested in the matter before the board and therefore lacked independence. Most of the arguments center around Kiphart. It is alleged in the Complaint that Kiphart, who owns more than 40% of Lime's stock and was the former and is the current board chairman, is obviously "interested." He is further alleged to control both Asplund and O'Rourke who, it is alleged, owe their jobs to Kiphart. And as pointed out above, both Capps and Valentine are Kiphart's sons-in-law. Thus, the argument for

lack of independence are in the main based on Kiphart's relation with Lime as the owner of more than 40% of the stock, and consequently his relationship with the remaining board members. However, for Plaintiffs to make a case that the board was not independent they must plead facts to demonstrate that Kiphart, and through him the other board members, had an interest in the misstatements of revenue, to the effect that he or they received some benefit from the misstatements that was not available to the other shareholders. *In re Walt Disney Co. Derivative Litigation,* 731 A.2d 342, 355 (Del Ch. 1998).

In the *Disney* case, the plaintiffs in attempting to justify their failure to make a demand on the Disney Board of Directors, alleged that Disney Chairman Michael Eisner was interested in the matter before the board and because he controlled 12 of the 15 members of the Board. The matter before the board to which Eisner was allegedly interested, over which the plaintiffs sought to sue on behalf of Disney, was an alleged overly lucrative employment agreement that the Board voted to give Michael Ovitz to induce him to serve as Disney's President. The Delaware Court held that the plaintiffs failed to allege facts with sufficient particularity to establish that Eisner had an interest in the Ovitz contract. In so finding the court took a practical view of the allegations. The plaintiffs had argued that it was to Eisner's financial

advantage to offer Ovitz a lucrative contract because, in addition to a long-time personal relationship he had with Ovitz, providing a lucrative compensation package to Ovitz established a high baseline which would make it easier for Eisner to negotiate increased compensation for himself. The court rejected this argument by noting that at that time Eisner owned several million options to purchase Disney stock as well as several million shares, and approval of Ovitz' expensive contract could, if thought to be excessive, could impact negatively on the value of Eisner stock and options.

Similarly, in this case, misstating revenue in order to increase stock prices would not be in the best interest of the largest shareholder such as Kiphart who did not sell his shares. Had he utilized the opportunity to unload his stock at the higher price, which plaintiffs do not allege, a case of interest could, of course, be made. Misstating revenue is somewhat similar to a Ponzi scheme in that the increased income on the front end will eventually turn up as reduced income at the back end. Consequently, a shareholder such as Kiphart stood to, and presumably did, take a bath as a result of the sharp drop in share price. Compl. ¶¶ 189, 194. In addition, according to the Complaint, Kiphart was on the hook for letters of credit of up to $300,000.00.

Plaintiffs also argue that O'Rourke and Asplund, current and former CEO's, Kiphart, as Chairman of the Board, and Barnum and Capps, as Audit Committee members face a substantial likelihood of liability due to their positions and thus could not be expected to vote to sue themselves. However the allegations of the Complaint to not rise above the "must have known" or "were recklessly unaware" of the alleged wrongdoing. Oversight liability under Delaware law is very difficult to establish. This is because directors are not subject to personal liability for employee failures unless they act or fail to act in bad faith, which means that "the directors were conscious of the fact that they were not doing their job. *In re Citigroup Inc. Shareholders Litigation,* 964 A.2d 106, 123 (Del Ch. 2009). If hindsight is the only basis for inference of bad faith, it is not enough. *Higginbotham v. Baxter Intern., Inc.,* 495 F.3d 753, 759 (7th Cir. 2007). Examples of allegations that might suffice to establish board liability would be (1) that the directors had received reports that the revenues were being improperly recorded and did nothing about; (2) that senior management was possibly engaged in insider trading by selling shares in unusual quantities to take advantage of the high price of the stock and to make sure the sales occurred before the stock tanked, *see, In re Cendant Corp. Derivative Action Litigation,* 189 F.R.D. 117, 129 (D.N.J.

1999); or (3) that they had failed to establish any procedure for monitoring employee actions. Here there are no such allegations pled. However, there is pled that the Board had some sort of internal review procedure because the misstatement of revenue was detected through an internal review brought about by management.

There are no specific allegations that any member of the Board had any prior knowledge of the alleged misstatements and no allegations that any board member had participated in making the misstatements in any way, other than by publishing them. This is not such egregious conduct that would face a substantial likelihood of liability due to their failure to prevent the misrepresentations. *Seminaris v. Landa,* 6612 A.2d 1350, 1354-5 (Del Ch. 1995).

Plaintiffs make a number of additions arguments as to why the Board faces liability. For example, the Complaint alleges the existence of a code of ethics that allegedly was violated but fails to allege any specific way that the Defendants violated it. The Complaint also alleges that certain of the Defendants, Asplund and O'Rourke, were named in a parallel securities litigation. Compl. ¶ 213. But Delaware law holds that being named a defendant in such parallel securities litigation does not provide an independent base for showing a substantial likelihood of liability. *Sherman v. Ryan,* 911

N.E.2d 378, 391 (Ill. App. 1st Dist. 2009). There are other allegations pled, but none rise to the level that would excuse failure to demand.

### IV. CONCLUSION

For the reasons stated herein, Plaintiffs having failed to make a demand on the Lime Board of Directors that it initiate a derivative action and having failed to establish that such a demand would have been futile, the Defendants' Motion to Dismiss is granted. The Plaintiffs having been given multiple chances previously to amend the Complaint, the Motion to Dismiss is granted with prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: 3/25/2014