# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD KUBERSKI and ERIC L. LAWTON, derivatively and on behalf of Nominal Defendant LIME ENERGY CO., | Case No. 12 C 7993 |
| | (Consolidated with Case No. 13 C 1708) |
| Plaintiffs, | District Judge: Hon. Harry D. Leinenweber |
| vs. | Magistrate Judge: Hon. Sidney I. Schenkier |
| JOHN O'ROURKE, JEFFREY MISTARZ, DAVID ASPLUND, GREGORY BARNUM, CHRISTOPHER CAPPS, WILLIAM CAREY, JR., JOSEPH DESMOND, STEPHEN GLICK, PRADEEP KAPADIA, RICHARD KIPHART, DANIEL PARKE, and DAVID VALENTINE, | |
| Defendants. | |
| -and- | |
| LIME ENERGY CO., a Delaware corporation, | |
| Nominal Defendant. | |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF JOINT UNOPPOSED MOTION FOR AN ORDER PURSUANT TO RULE 60 TO VACATE TERMINATION OF DERIVATIVE ACTION, REOPEN DERIVATIVE ACTION AND PRELIMINARILY <u>APPROVE DERIVATIVE SETTLEMENT</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................... 3

    A. The Stockholder Derivative Litigation ...................................................... 3

    B. The Settlement Negotiations ...................................................................... 4

    C. The Benefits of Settlement ......................................................................... 4

III. ARGUMENT .................................................................................................................. 5

    A. Vacating the Portion of the Minute Order Terminating the Action Will Allow the Settlement to Move Forward ...................................................................... 5

    B. The Standard for Preliminary Approval .................................................... 6

    C. Preliminary Approval of the Settlement Is Proper and Notice of the Settlement Should Be Ordered ...................................................................... 7

        1. The Strength of the Claims *vs*. the Terms of the Settlement ...................... 8

        2. The Likely Complexity, Length and Expense of Continued Litigation .... 10

        3. The Extent of Any Possible Opposition to the Settlement ....................... 10

        4. The Opinion of Competent, Experienced Counsel ................................... 11

        5. The Stage of Proceedings and Amount of Discovery Completed ............ 11

    D. The Court Should Approve the Stipulated Form and Manner of the Notice Because It Satisfies the Requirements of Rule 23.1(c) and Due Process ............. 12

    E. The Proposed Schedule of Events .......................................................... 13

IV. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.*,
  455 F.2d 101 (7th Cir. 1972) .................................................................................................13

*Am. Int'l Grp., Inc v. ACE INA Holdings, Inc.*,
  Nos. 07 C 2898 & 09 C 2026, 2011 WL 3290302 (N.D. Ill. July 26, 2011)................... passim

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134
  F.3d 873 (7th Cir. 1998) ....................................................................................................2, 6

*Carlough v. Amchem Prods., Inc.*,
  158 F.R.D. 314 (E.D. Pa. 1993)..............................................................................................13

*Chaffee v. A & P Tea Co.*,
  No. 79 C 2735, 1991 WL 5859 (N.D. Ill. Jan. 16, 1991) ........................................................13

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005)...................................................................................7, 9

*Hinsdale v. Farmers Nat'l Bank & Trust Co.*,
  823 F.2d 993 (6th Cir. 1987) ....................................................................................................5

*In re The Cheesecake Factory Inc. Derivative Litig.*,
  No. CV 06-6234, slip. op. (C.D. Cal. Mar. 7, 2008)...............................................................13

*In re Heelys Inc. Derivative Litig.*,
  No. 07-cv-1682, slip. op. (N.D. Tex. Nov. 17, 2009).............................................................13

*In re NVIDIA Corp. Derivative Litig.*,
  No. C 06-06110 SBA, 2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009) ....................9

*In re Traffic Exec. Ass'n E.R.R.*,
  627 F.2d 631 (2d Cir. 1980).....................................................................................................7

*Langendorf v. Conseco Senior Health Ins. Co.*,
  No. 08 C 3914, 2009 U.S. Dist. LEXIS 131289 (N.D. Ill. Nov. 18, 2009).............................10

*Lowe v. McGraw-Hill Cos.*,
  361 F.3d 335 (7th Cir. 2004) ....................................................................................................5

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) .......................................................................................9, 10, 12

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*,
 834 F.2d 677 (7th Cir. 1987) ..................................................................................................11

*Metropolitan Hous. Dev. Corp. v. Vill. of Arlington Heights*,
 616 F.2d 1006 (7th Cir. 1980) ..................................................................................................7

*Mills v. Elec. Auto-Lite Co.*,
 396 U.S. 375 (1970)..................................................................................................................9

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
 No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ..................................................11

*Susquehanna Corp. v. Korholz*,
 84 F.R.D. 316 (N.D. Ill. 1979)........................................................................................7, 8, 13

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*,
 447 F.2d 647 (7th Cir. 1971) ...................................................................................................12

*Washington Bancorporation v. Said*,
 No. 88-3111 (RCL), 1989 U.S. Dist. LEXIS 7394 (D.D.C. June 23, 1989) .............................7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23.1 ................................................................................3, 12, 13

Federal Rule of Civil Procedure 23.1(c)....................................................................................6, 12

Federal Rule of Civil Procedure 60(b)(6) .........................................................................................5

Rules 60(b)(6) and 23.1(c) of the Federal Rules of Civil Procedure ................................................1

I.  **INTRODUCTION**

Plaintiffs Richard Kuberski and Eric L. Lawton (collectively, the "Derivative Plaintiffs"), nominal defendant Lime Energy Co. ("Lime" or the "Company"), and John O'Rourke, Jeffrey Mistarz, David Asplund, Gregory Barnum, Christopher Capps, William Carey, Jr., Joseph Desmond, Stephen Glick, Pradeep Kapadia, Richard Kiphart, Daniel Parke, and David Valentine (collectively, the "Individual Defendants," and collectively with Lime, the "Defendants")[1] have submitted a Joint Unopposed Motion for an Order Pursuant to Rule 60 to Vacate Termination of Derivative Action, Reopen Derivative Action and Preliminarily Approve Derivative Settlement (the "Motion"). As set forth more fully herein, following this Court's Minute Order dated March 25, 2014 (the "Minute Order") dismissing and terminating the above-captioned action (the "Action"), Plaintiffs and Lime engaged in extensive arm's-length negotiations, with the assistance of both a court-appointed mediator in the Seventh Circuit Court of Appeals and a private mediator retained by the Parties, regarding a potential resolution of the Action. Those negotiations culminated in the Stipulation of Settlement Agreement dated April 1, 2015 (the "Stipulation") and the terms set forth therein (the "Settlement").[2] Pursuant to the Settlement, Lime will implement a number of corporate governance reforms that address the matters alleged in the Action, thereby strengthening the Company's internal controls, procedures and Board practices. Derivative Plaintiffs and Lime agree that the Settlement is in the best interests of and confers substantial benefits upon the Company and its stockholders.

As a result of the foregoing, pursuant to Rules 60(b)(6) and 23.1(c) of the Federal Rules of Civil Procedure, the Parties jointly submit this Memorandum of Law in support of the Motion

---

[1] The Defendants collectively with the Derivative Plaintiffs shall be referred to as the "Parties."

[2] A copy of the Stipulation, and its accompanying exhibits, are attached to the Motion as Exhibit 1. Capitalized terms have the meanings ascribed to them in the Stipulation.

and respectfully request that the Court enter the proposed order vacating the portion of the Court's Minute Order terminating the Action and reopening the Action to consider the Motion by the Parties for preliminary approval of the Settlement and enter the proposed Preliminary Approval Order:[3] (i) granting preliminary approval of the Settlement; (ii) approving the form and method of providing Notice of the Settlement to Lime's shareholders;[4] and (iii) scheduling a final Settlement Hearing for the Court to consider, among other things, (a) final approval of the Settlement and entry of a proposed Final Judgment and Order of Dismissal and (b) approval of the agreed-to Fee and Expense Award to Derivative Counsel.

In determining whether preliminary approval is appropriate, the issue before the Court is whether the Settlement is within a range of possible approval, such that Notice of the Settlement should be provided to Lime's stockholders and a Settlement Hearing should be scheduled for final approval of the Settlement. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2004) (setting forth the approval procedure for settlement of a shareholder derivative action). At the preliminary-approval stage, the Court is not required to make an ultimate determination as to whether the Settlement should be finally approved, *i.e.*, whether the Settlement is fair, reasonable, and adequate; rather, courts in this District perform a "summary version" of the final fairness inquiry at the preliminary approval stage. *See Am. Int'l Grp., Inc v. ACE INA Holdings, Inc.*, Nos. 07 C 2898 & 09 C 2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). As discussed below, the Settlement meets the standard for preliminary approval.

---

[3] The proposed Preliminary Approval Order is attached to the Stipulation as Exhibit A.

[4] The proposed Notice is attached to the Stipulation as Exhibit B.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Stockholder Derivative Litigation

On October 5, 2012, plaintiff Richard Kuberski filed a stockholder derivative action captioned *Kuberski v. Lime Energy Co., et al.*, No. 12 C 7993 (the "*Kuberski* Action"). On March 5, 2013, plaintiff Eric L. Lawton filed a second stockholder derivative action captioned *Lawton v. O'Rourke, et al.*, No. 13 C 1708 (the "*Lawton* Action"). On March 26, 2013, plaintiff in the *Kuberski* Action and plaintiff in the *Lawton* Action moved to consolidate the two cases. On April 9, 2013, the Court granted the motion to consolidate and appointed the law firms Bottini & Bottini, Inc. and The Rosen Law Firm, P.A. as co-lead counsel for Plaintiffs, and appointed the law firm of Heffner & Hurst LLP (then known as Susman Heffner & Hurst LLP) as liaison counsel for Plaintiffs (collectively "Derivative Counsel"). The Court also ordered Plaintiffs to file an Amended Consolidated Complaint by May 9, 2013.

On May 9, 2013, Derivative Plaintiffs filed a Consolidated Amended Complaint (the "Consolidated Complaint"). The Consolidated Complaint alleged derivative claims on behalf of Lime and against Lime's directors for alleged breaches of fiduciary duties relating to the misreporting of revenue in the Company's financial statements on Forms 10-K for the periods ending December 31, 2010 and December 31, 2011, and on a Form 10-Q for the period ending March 31, 2012, and the failure to file quarterly or annual financial statements during the remainder of 2012.

On June 10, 2013, Defendants moved to dismiss the Consolidated Complaint pursuant to Federal Rule of Civil Procedure 23.1 for failure to make a demand on Lime's Board of Directors. On March 25, 2014, after full briefing on the motion, the Court issued a memorandum opinion and order granting Defendants' motion and dismissing the case with prejudice on the basis that Derivative Plaintiffs had failed to make a demand on Lime's Board of Directors and had failed to

establish that such a demand would have been futile. On April 22, 2014, the Derivative Plaintiffs moved for reconsideration. On June 25, 2014, the Court denied the Derivative Plaintiffs' reconsideration motion.

On July 25, 2014, the Derivative Plaintiffs filed a notice of appeal to the Seventh Circuit Court of Appeals regarding the Court's dismissal and denial of the Derivative Plaintiffs' motion for reconsideration.

**B.     The Settlement Negotiations**

On August 14, 2014, pursuant to the Seventh Circuit's mediation program, the Parties participated in a court-ordered mediation conference. The Parties did not reach an agreement, but briefing on the appeal was suspended to allow the parties to exchange written communications regarding settlement. On September 11, 2014, after exchanging written letters regarding settlement, the Parties conferred with a Seventh Circuit mediator. The Parties did not reach a settlement, but continued to negotiate after the conference.

In October 2014, the Parties retained a private mediator to help explore settlement options. Over the next several months, the Parties continued to engage in settlement communications. On February 17, 2015, after additional status conferences with the Seventh Circuit mediator and further communications with the private mediator, the Parties reached a settlement agreement. The Parties committed the agreement to writing and executed the Stipulation on April 1, 2015.

**C.     The Benefits of Settlement**

The Settlement obtained by the Parties will benefit the Company and its stockholders because it requires Lime to implement reforms to its governance practices and procedures and will put an end to the litigation. This is a good result. Thus, as detailed below, the Settlement warrants preliminary approval.

4

III. ARGUMENT

    A. **Vacating the Portion of the Minute Order Terminating the Action Will Allow the Settlement to Move Forward**

To allow the Settlement to proceed, it is appropriate for the Court, pursuant to Federal Rule of Civil Procedure 60(b)(6), to vacate the termination of the Action so the Court can consider the Parties' joint unopposed motion for preliminary approval of the Settlement. Rule 60(b)(6) provides that the Court may grant relief from a judgment or order for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6). The Seventh Circuit has noted that subsection (6) of Rule 60(b) is a catch-all or safety valve provision. *See Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 342 (7th Cir. 2004). While other subsections are subject to a one-year filing requirement and provide relief where there has been (1) a mistake or excusable neglect, or (2) newly discovered evidence, or (3) where fraud is involved, subsection (6) is designed to be used in unusual or extraordinary situations and has no time limit. *Id.*

Here, the basis for the motion for preliminary approval is the an unusual or extraordinary situation because, after the Action was terminated, the Parties arrived at a settlement which they wish to place before the Court for preliminary approval. A motion pursuant to Rule 60(b)(6) is the appropriate method to place the Settlement before the Court. *See Hinsdale v. Farmers Nat'l Bank & Trust Co.*, 823 F.2d 993 (6th Cir. 1987) (holding that a motion pursuant to Fed. R. Civ. P. 60(b)(6) is the method by which the parties can bring a settlement before the court when an action has previously been dismissed). Relieving the Parties from the Minute Order terminating this Action is justified based on the desire of the Parties to settle the dispute and resolve their differences rather than continue with future litigation and the risks inherent in continued litigation. Vacating the portion of the Minute Order terminating the Action will allow the Court to consider the Settlement and to order that Notice of the Settlement be provided to Lime's

5

stockholders so that they, too, can consider the Settlement. Moreover, if the Settlement is approved, Lime, the real party in interest, will receive the Settlement's benefits.

### B. The Standard for Preliminary Approval

Federal Rule of Civil Procedure 23.1(c) provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." FED. R. CIV. P. 23.1(c). Court approval of a derivative settlement involves two steps: (1) determining "whether the proposed settlement is 'within the range of possible approval'" such that notice of the settlement should be provided to class members; and (2) after such notice has been provided, holding a fairness hearing to determine whether the settlement is fair, reasonable and adequate. *Armstrong*, 616 F.2d at 314; *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2004) (setting forth the approval procedure for settlement of a shareholder derivative action).

The purpose of preliminary approval is to determine whether to notify a company's stockholders of the proposed settlement and whether to proceed with a fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the [shareholders] of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement."). Importantly, preliminary approval does not require the trial court to answer the ultimate question – whether a proposed settlement is fair, reasonable and adequate. *See Am. Int'l Grp.*, 2011 WL 3290302, at *6 ("At the preliminary approval stage . . . the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into

6

whether the settlement meets [the requirements for final approval]"); *In re Traffic Exec. Ass'n E.R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (Preliminary approval "is not tantamount to a finding that the settlement is fair and reasonable. It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to [shareholders] and hold a full-scale hearing as to its fairness."); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 ("the final decision on approval is made after the hearing."). Rather, "courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage." *Am. Int'l Grp.*, 2011 WL 3290302, at *6. The Seventh Circuit has established five factors that courts should consider when determining the fairness of a derivative or class action settlement:

> (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.

*Id.* (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006), and *Isby v. Bayh*, 75 F.3d 1191, 1999 (7th Cir. 1996)); *see also Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 319-20 (N.D. Ill. 1979) (applying same factors to shareholder derivative action). As set forth below, all of these factors weigh in favor of not only preliminary but also final approval of the Settlement.

### C. Preliminary Approval of the Settlement Is Proper and Notice of the Settlement Should Be Ordered

It is well-established that "[t]he law generally favors and encourages settlements." *Metropolitan Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980). "Settlements of shareholder derivative actions are favored because of the notorious complexity of such litigation." *Washington Bancorporation v. Said*, No. 88-3111 (RCL), 1989 U.S. Dist. LEXIS 7394, at *3 (D.D.C. June 23, 1989); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852

7

(E.D. Mo. 2005) ("Settlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'"). Thus, "[w]hen, in a derivative action, a settlement proposal is arrived at after arms-length negotiations have been conducted, it is clear that sufficient discovery has been taken to allow the court and the parties to act intelligently, the counsel involved are competent and experienced, and the number of objectors, or the interest they represent, is not large, it may properly be presumed that the agreement is fair and adequate." *Susquehanna Corp.*, 84 F.R.D. at 321 (citing *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975)).

Here, the Settlement was reached after extensive arm's-length negotiations between experienced counsel for the Parties and provides substantial benefits to the Company and its stockholders while eliminating the expense, risk and delay inherent in such complex litigation. In connection with the Settlement, Lime will adopt a series of reforms that Derivative Plaintiffs believe are designed to improve the Company's overall corporate governance. Thus, for all the reasons stated herein, the Settlement of the claims on the agreed-upon terms is "within the range of possible approval" in order to preliminarily approve the Settlement for the purpose of providing notice and holding a future Settlement Hearing.

        **1.**        **The Strength of the Claims *vs*. the Terms of the Settlement**

Defendants have denied and continue to deny all of the claims and contentions alleged in the Action. Defendants also have denied and continue to deny all allegations that Lime has suffered damage by or as a result of matters alleged in the Action with respect to the Defendants. Defendants have nevertheless concluded that further litigation would be protracted, expensive, and distracting and that it is desirable to settle the Action upon the terms and conditions set forth in this Stipulation. Defendants have, therefore, determined that it would be beneficial to Lime

8

and its shareholders that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

Derivative Plaintiffs and their counsel believe that their claims and allegations were and are meritorious, however, they also recognize the possibility that their claims may not succeed and they would be unable to secure the substantial relief for Lime and its stockholders achieved by the Settlement, and might even fail to obtain any relief at all. Derivative Plaintiffs believe that the Settlement is an excellent result for Lime because it provides for the adoption of corporate governance reforms. Corporate governance reforms such as those achieved here have formed the basis of settlements of many stockholder derivative actions, as strong corporate governance is fundamental to a corporation's well-being and success. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970) ("corporate therapeutics . . . furnish a benefit to all shareholders"); *see also*, *e.g.*, *Cohn*, 375 F. Supp. 2d at 853 ("Courts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies.") (citing cases); *In re NVIDIA Corp. Derivative Litig.*, No. C 06-06110 SBA, 2009 U.S. Dist. LEXIS 24973, at \*\*11-12 (N.D. Cal. Mar. 18, 2009) (same). If the litigation continued, Lime's recovery at trial would be limited to monetary damages or equitable relief, thus foreclosing Derivative Plaintiffs' ability to seek the corporate governance reforms obtained here, which may, in fact, be more valuable to the Company and its stockholders than any potential monetary award or equitable relief obtained after trial, post-trial motions, and appeals. *See Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("[E]ffects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment."). Accordingly, this factor favors preliminary approval of the Settlement.

9

### 2. The Likely Complexity, Length and Expense of Continued Litigation

"Consideration of the complexity, expense and duration of continued litigation 'is intended to capture the probable costs, in both time and money, of continued litigation.'" *Langendorf v. Conseco Senior Health Ins. Co.*, No. 08 C 3914, 2009 U.S. Dist. LEXIS 131289, at **22-23 (N.D. Ill. Nov. 18, 2009) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995)). "By comparing the significance of immediate recovery with the complexities, expense and likely duration of continued litigation, a court may assess whether it is proper for the parties 'to take the bird in the hand instead of a prospective flock in the bush.'" *Id.* at *23 (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)). Shareholder derivative actions are notoriously complicated and involve complex legal and factual issues that can be litigated to a conclusion on the merits only at great expense over an extended period of time. *See Maher*, 714 F.2d at 455. This stockholder derivative litigation would not have been an exception. Plaintiff Kuberski filed his initial complaint in 2012, thus, the litigation has been pending for almost three years. Absent the Settlement, the claims would have continued to be fiercely contested by the parties, including through an appeal currently pending in the Seventh Circuit. In all likelihood, continued litigation to a resolution at trial and/or on appeal would have taken several more years, "requir[ing] vast expense and a great deal of time, on top of that already expended." *Am. Int'l Grp.*, 2011 WL 3290302, at *7. Accordingly, this factor weighs in favor of preliminary approval. *Id.*

### 3. The Extent of Any Possible Opposition to the Settlement

Because the Parties have not yet disseminated the Notice of the Settlement to the Company's stockholders, "it is premature to fully assess this factor." *AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 349 (N.D. Ill. 2010). At this point, however, neither

Defendants nor Derivative Plaintiffs are aware of any Lime stockholders who intend to object to the Settlement, thus this factor weighs in favor of preliminary approval.

### 4. The Opinion of Competent, Experienced Counsel

"The court is entitled to rely heavily on the opinion of competent counsel" in approving a settlement. *See Am. Int'l Grp.*, 2011 WL 3290302, at *8 (internal quotations omitted). Counsel for the Parties here have extensive experience in complex litigation of this nature,[5] and believe that the Settlement is fair, reasonable and adequate in light of the circumstances of this case. These unanimously favorable assessments should be afforded considerable weight by the Court, particularly since the Settlement was reached only after extensive arm's-length negotiations in which all Parties had a firm understanding of the factual and legal issues presented and the relative strengths and weaknesses of their respective claims and defenses. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 834 F.2d 677, 684 (7th Cir. 1987) (emphasizing the importance of a negotiation process free of collusion). Furthermore, counsel for the Parties did not negotiate the Fee and Expense Award until after the material terms of the Settlement had been agreed upon, and did so with a mediator. Accordingly, there is absolutely no indication of fraud or collusion, and the opinions of counsel for the Parties should be afforded significant weight. *See*, *e.g.*, *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (approving a settlement after finding "no possibility of collusion between the parties").

### 5. The Stage of Proceedings and Amount of Discovery Completed

While the litigation is procedurally in a relatively early stage, there has been an extensive and thorough exchange of information relative to the issues and merits of the litigation to justify

---

[5] See the firm resumes of Derivative Counsel attached hereto as Exhibits A through D.

11

preliminary approval of the Settlement. As described in Section II of the Stipulation, Derivative Plaintiffs conducted a comprehensive investigation during the development, prosecution and settlement of the litigation in order to confirm the fairness and reasonableness of the Settlement. Courts in this District have recognized that "courts have preliminarily approved settlements where there was … a significant amount of informal discovery … or where no discovery at all was conducted before the settlement agreement was reached." *Am. Int'l Grp.*, 2011 WL 3290302, at *8 (internal quotations and citations omitted). Accordingly, this factor also weighs in favor of preliminary approval of the Settlement.

As outlined above, and as demonstrated more fully in the Stipulation, Defendants submit that the Settlement is a good result for Lime and its stockholders. Thus, the Settlement falls well within the range of possible approval.

### D. The Court Should Approve the Stipulated Form and Manner of the Notice Because It Satisfies the Requirements of Rule 23.1(c) and Due Process

Rule 23.1(c) requires that notice of a proposed settlement be given to shareholders "in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Thus, the Court has discretion in determining the contents of the notice and the manner in which notice will be provided. *See United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 654 (7th Cir. 1971); *Maher*, 714 F.2d at 452 (notice was sufficient, although its contents "could have been enlarged").

Here, the proposed Notice adequately informs Lime shareholders of (1) the terms of the Settlement; (2) the date of the final hearing; (3) the amount of the attorneys' fees, expenses, and service awards to be requested by the Derivative Plaintiffs and their counsel; and (4) the deadline and procedure for objecting to the Settlement. Stipulation Ex. B. This is sufficient because both Rule 23.1 and due process require only that the proposed notice "fairly apprise [Lime

12

shareholders] of the proposed compromise and of the options open to dissenting [shareholders]." *Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972); *Susquehanna Corp.*, 84 F.R.D. at 321 (overruling objections to a similar notice).

To ensure that Lime shareholders receive notice, the parties have agreed that Defendants will publish the notice in the *Investor's Business Daily*, file it on a Form 8-K, and post it on the investor relations section of Lime's website. Stipulation ¶ 5.2. This multi-faceted procedure is consistent with the established practice in shareholder litigation. *See Chaffee v. A & P Tea Co.*, No. 79 C 2735, 1991 WL 5859, at *4 (N.D. Ill. Jan. 16, 1991) (requiring the "best notice practicable," not "actual notice").[6] The Court should therefore approve the content and manner of the notice.

\*    \*    \*

In sum, the Court should approve the Settlement preliminarily and order that Notice be disseminated to stockholders consistent with the Stipulation, *i.e.*, filing the Notice and Stipulation with the Securities and Exchange Commission ("SEC") in a Form 8-K, posting the Notice on the Company's website, and publishing the Notice once in the *Investor's Business Daily*. *See* Stipulation ¶ 5.2.

### E.  The Proposed Schedule of Events

In connection with preliminary approval of the Settlement, the Parties request that the Court establish dates by which the Notice will be disseminated to Lime stockholders and by

---

[6] *See also*, *e.g.*, *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 323 (E.D. Pa. 1993) (publication may be the "principal means" for giving notice); *In re The Cheesecake Factory Inc. Derivative Litig.*, No. CV 06-6234, slip. op. (C.D. Cal. Mar. 7, 2008) (holding that publication of notice in the Investor's Business Daily met the requirements of Rule 23.1 and due process); *In re Heelys Inc. Derivative Litig.*, No. 07-cv-1682, slip. op. (N.D. Tex. Nov. 17, 2009) (same).

13

which Lime stockholders may comment on the Settlement, and a date for the Settlement Hearing.

As set forth in the Preliminary Approval Order, the Parties propose the following:

| | |
|---|---|
| The Company shall cause the Notice and Stipulation to be filed with the SEC via a Form 8-K, posted on its website, and published on one occasion in the *Investor's Business Daily*. | No later than ten (10) calendar days after the Court enters an Order preliminarily approving the Settlement ("Notice Date"). |
| All papers in support of the Settlement filed with the Court and served upon all Parties. | At least twenty-one (21) calendar days prior to the Settlement Hearing. |
| Counsel for the Company shall file with the Court proof, by affidavit or declaration, of filing and publication of the Notice. | At least fourteen (14) calendar days prior to the Settlement Hearing. |
| Any objections to the Settlement by Lime stockholders filed with the Court and served upon all Parties. | At least fourteen (14) calendar days prior to the Settlement Hearing. |
| Any reply papers in support of the Settlement and response(s) to objections filed with the Court and served upon all Parties. | At least seven (7) calendar days prior to the Settlement Hearing. |
| Settlement Hearing for Final Approval of the Settlement. | At least 65 calendar days after the entry of the Preliminary Approval Order. |

The Parties propose that the Settlement Hearing be scheduled at least 65 calendar days after the entry of the Preliminary Approval Order (granting this motion). The Settlement Hearing date can be inserted into ¶ 3 of the Preliminary Approval Order. This schedule, similar to those used in numerous derivative settlements, affords due process to the Company's stockholders with respect to their rights *vis-à-vis* the Settlement.

## IV.     CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant preliminary approval of the Settlement, approve the proposed Notice of the Settlement to Lime's stockholders, schedule the Settlement Hearing, and grant such other and further relief that the Court may deem to be appropriate.

14

Dated: April 6, 2015                                    Respectfully submitted,

\_/s/ Melanie E. Walker_____                          \_/s/ Francis A. Bottini, Jr.\_\_\_\_
Walter C. Carlson                                       Francis A. Bottini, Jr.
Melanie E. Walker                                       Albert Y. Chang
SIDLEY AUSTIN LLP                                       BOTTINI & BOTTINI, INC.
One South Dearborn Street                               7817 Ivanhoe Avenue, Suite 102
Chicago, Illinois 60603                                 La Jolla, California 92037
(312) 853-7000                                          (858) 914-2001
*Counsel for Defendants*                                *Co-Lead Counsel for Plaintiffs*


\_/s/ Laurence M. Rosen_____                          \_/s/ Matthew Thomas Heffner\_\_\_\_
Laurence M. Rosen                                       Matthew Thomas Heffner
THE ROSEN LAW FIRM, P.A.                                HEFFNER & HURST LLP
275 Madison Avenue, 34th Floor                          30 North LaSalle Street, Suite 1210
New York, New York 10016                                Chicago, Illinois 60602
(212) 686-1060                                          (312) 346-3466
*Co-Lead Counsel for Plaintiffs*                        *Liaison Counsel for Plaintiffs*